# United States Court of Appeals

## For the Seventh Circuit

Chicago, Illinois 60604

### NOTICE OF ISSUANCE OF MANDATE

DATE:    November 24, 2004

TO:      John M. Waters
         United States District Court
         Central District of Illinois
         151 U.S. Courthouse
         600 E. Monroe Street
         United States Courthouse & Federal Building
         Springfield, IL  62701

FROM:    Gino J. Agnello, Clerk

| 03-3223 | 03-3224 |
|---|---|
| Commonwealth Insur v. Titan Tire Corp | Pirelli Tire LLC v Titan Tire Corp. |
| 99 C 3209, Jeanne E. Scott, Judge | 00 C 3182, Jeanne E. Scott, Judge |

           03-3225
           Titan Tire Corp v. Pirelli Tire LLC
           01 C 3087, Jeanne E. Scott, Judge

     Herewith is the mandate of this court in this appeal, along
     with the Bill of Costs, if any.  A certified copy of the
     opinion/order of the court and judgment, if any, and any
     direction as to costs shall constitute the mandate.

     [ ] No record filed
     [X] Original record on appeal consisting of:
**ENCLOSED:**                                    **TO BE RETURNED AT LATER DATE:**
     [ ]     Volumes of pleadings              [4]
     [ ]     Loose pleadings                   [6]
     [ ]     Volumes of transcripts            [7]
     [ ]     Volumes of exhibits               [ ]
     [ ]     Volumes of depositions            [ ]
     [ ]     In Camera material                [ ]
     [ ]     Other_____ [ ]

             Record being retained for use           [X]
             in Appeal No. ***** 04-3761 *****

     Copies of this notice sent to:     Counsel of record
     [ ]     United States Marshal
     [ ]     United States Probation Office
**NOTE TO COUNSEL:**
     If any physical and large documentary exhibits have been filed in
     the above-entitled cause, they are to be withdrawn ten days from the
     date of this notice.  Exhibits not withdrawn during this period will
     be disposed of.

     Please acknowledge receipt of these documents on the enclosed copy
     of this notice.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
     Received above mandate and record, if any, from the Clerk, U.S.

# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

*Certified Copy*

JUDGMENT - WITH ORAL ARGUMENT

Date: **November 2, 2004**

BEFORE:        Honorable DANIEL A. MANION, Circuit Judge

               Honorable ILANA DIAMOND ROVNER, Circuit Judge

               Honorable DIANE P. WOOD, Circuit Judge

| | |
|---|---|
| COMMONWEALTH INSURANCE COMPANY,<br>    Plaintiff,<br><br>No. 03-3223    v.<br><br>TITAN TIRE CORPORATION,<br>    Defendant-Appellant,<br><br>PIRELLI TIRE LLC, formerly known as PIRELLI TIRE CORPORATION, formerly known as PIRELLI ARMSTRONG TIRE CORPORATION,<br>    Defendant-Appellee. | Appeal from the United States District Court for the Central District of Illinois.<br><br>No. 99 C 3209<br><br>Jeanne E. Scott, Judge. |
| PIRELLI TIRE LLC, formerly known as PIRELLI TIRE CORPORATION, formerly known as PIRELLI ARMSTRONG TIRE CORPORATION,<br>    Plaintiff-Appellee,<br><br>No. 03-3224    v.<br><br>TITAN TIRE CORPORATION,<br>    Defendant-Appellant. | Appeal from the United States District Court for the Central District of Illinois.<br><br>No. 00 C 3182<br><br>Jeanne E. Scott, Judge. |
| TITAN TIRE CORPORATION, an Illinois corporation,<br>    Plaintiff-Appellant,<br><br>No. 03-3225    v.<br><br>PIRELLI TIRE LLC, a Delaware limited liability company formerly known as PIRELLI TIRE CORPORATION, formerly known as PIRELLI ARMSTRONG TIRE CORPORATION,<br>    Defendant-Appellee. | Appeal from the United States District Court for the Central District of Illinois.<br><br>No. 01 C 3087<br><br>Jeanne E. Scott, Judge. |

    We AFFIRM in part, REVERSE in part, VACATE the district court's judgment, and REMAND to the district court for further proceedings consistent with this opinion. Each party to bear its own costs.

CERTIFIED COPY

# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 03-3223, 03-3224 & 03-3225

COMMONWEALTH INSURANCE COMPANY,

*Plaintiff,*

v.

TITAN TIRE CORPORATION,

*Defendant-Appellant,*

v.

PIRELLI TIRE, LLC, formerly known as Pirelli Tire Corporation, formerly known as Pirelli Armstrong Tire Corporation,

*Defendant-Appellee.*

Appeals from the United States District Court
for the Central District of Illinois.
Nos. 99 C 3209, 00 C 3182 & 01 C 3087—Jeanne E. Scott, *Judge.*

ARGUED SEPTEMBER 21, 2004—DECIDED NOVEMBER 2, 2004

Before MANION, ROVNER, and WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* Following a $55 million settlement of a Texas case involving eight deaths allegedly caused by a defective tire, the two tire companies involved sued each

2                                  Nos. 03-3223, 03-3224 & 03-3225

other, claiming breach of an indemnity agreement. The claims were eventually tried in the Central District of Illinois, which had diversity jurisdiction over the matter.[1] Pirelli Tire, LLC won a jury verdict for the underlying trial expenses and attorneys' fees against Titan Tire Corporation in the amount of $259,775.98, which included interest. On appeal, Titan challenges a key jury instruction ruling by the district court as well as several other district court rulings that affected the trial proceedings. We affirm in part and reverse in part.

---

[1] Before the district court and in this court it was asserted that "Pirelli was and is a citizen of the State of Delaware, being a limited liability company incorporated under the laws of the State of Delaware, formerly having its principal place of business in Connecticut and currently having its principal place of business in Georgia." However, limited liability companies are *unincorporated* entities, and, for diversity purposes, "limited liability companies are citizens of every state of which any member is a citizen." *See Belleville Catering Co. v. Champaign Mkt. Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003). Therefore, to cure this jurisdictional defect, this court ordered a supplemental statement of jurisdiction from Pirelli. *See* 28 U.S.C. § 1653. Fortunately for all concerned, Pirelli's supplemental statement reveals that we do have subject matter jurisdiction. Pirelli's sole member, Pirelli North America, Inc., is a corporation incorporated in the State of Delaware with its principal place of business in Connecticut, and complete diversity of citizenship exists in the action between Pirelli and Titan because Titan is a corporation incorporated in the State of Illinois with its principal place of business in the Iowa. Counsel and litigants are again cautioned to carefully scrutinize all jurisdictional requirements lest they encounter possible dismissal at this late stage of litigation. *See Belleville*, 350 F.3d at 694.

Nos. 03-3223, 03-3224 & 03-3225                              3

## I.

On July 16, 1994, Pirelli sold a tire plant in Des Moines, Iowa, to Titan. At the same time, the two entered into a manufacturing agreement under which Titan would manufacture light truck tires for Pirelli at the Des Moines plant according to Pirelli's specifications. Pursuant to this agreement, Titan agreed to indemnify Pirelli for any expenses caused by tire defects resulting from Titan's actions or inactions. This contractual relationship lasted until 1998, when a strike caused the permanent shut-down of the Des Moines plant.

Shortly after Titan began producing tires under the initial agreement in September 1994, Pirelli discovered a tread defect in the relevant tire design. Consequently, in November and December 1994, Titan temporarily halted production, and Pirelli improved its design. On November 22, 1994, Pirelli provided its design improvements to Titan and by letter agreed to indemnify Titan and hold Titan harmless with respect to any claims arising from the tread defects of the prior design. This so-called letter agreement of November 22 ("the letter agreement") was modified on December 14, 1994, with an addendum ("the addendum") handwritten on the margin of the letter agreement by Titan's president, Maurice Taylor, a non-attorney. The addendum stated that the indemnity arrangement in the letter agreement covered tires "that had been produced since Sept[ember] 1, 1994." The addendum is at the epicenter of this appeal.

The addendum became a point of contention as the result of a 1998 automobile accident in Duval County, Texas, in which eight people died. The accident triggered a negligence and product liability action over a light truck tire involved in the accident. Initially, Titan and Pirelli were named as defendants in the underlying action, but, in the early stages of that case, the plaintiffs dismissed their claims against Pirelli. Nonetheless, as the result of a Titan cross-claim for indem-

nity, Pirelli remained exposed to liability in the underlying suit. During the underlying litigation, Titan and Pirelli posited—to varying degrees—that the tire at issue was not defective. In the end, however, Titan's insurer, Commonwealth Insurance Company, paid $55 million to settle the underlying case, and Titan dismissed its cross-claim against Pirelli in that case.

The indemnity battle, nevertheless, was far from over. After the settlement, three new lawsuits involving indemnity and other claims arising from the underlying litigation were filed in three different jurisdictions by and against Pirelli, Titan, and Commonwealth. Each entity was a plaintiff as well as defendant in at least one of the three suits. Eventually, the three suits were consolidated in the United States District Court for the Central District of Illinois. Matters concerning Commonwealth are not before this court, and only two causes of action are pertinent to this appeal: Titan's direct claim against Pirelli for breach of indemnity agreement, and Pirelli's counterclaim against Titan for breach of the same indemnity agreement. Through these claims, each party sought to recover the attorneys' fees and other expenses it incurred as the result of the underlying action. Of the district court's numerous decisions in this complex case, only four remain at issue in this appeal.

At the summary judgment stage, the district court concluded that the unambiguous text of the addendum limited the duration of the letter agreement. Specifically, the district court, applying Illinois law, ruled that the addendum confined Pirelli's obligation to indemnify Titan for tires produced between September 1, 1994 and December 14, 1994. After that date, when the addendum's coverage expired, the default indemnity arrangement formulated in the original manufacturing agreement controlled. Under the district court's interpretation of the addendum, the key

Nos. 03-3223, 03-3224 & 03-3225                    5

fact of each party's indemnity claim against the other was when the tire at issue was made. For Titan to prevail on its claim, Titan had to prove that the tire was made before December 14, 1994. On the other hand, Pirelli had to prove that the tire was made after December 14, 1994. Further, the district court twice ruled that the date the tire was produced was an issue for trial. In the second ruling, the district court explicitly held that the evidence presented by Pirelli did not show when the tire was made and, as a result, that question of fact remained for trial.

The case then proceeded to trial. On the first day of trial, Titan's witness, who was expected to establish the date of production, suddenly backed out of testifying. The witness determined, at the last minute, that he could not testify that the tire was made before December 14, 1994. Absent this testimony, Titan conceded that it could not meet its burden of proving that the tire was made before December 14, 1994. Titan rested its case without presenting any evidence, and the district court granted Pirelli's uncontested motion for judgment as a matter of law on Titan's claim against Pirelli.

The district court then began the trial on Pirelli's counterclaim. At a mid-trial conference on the jury instructions, Titan proposed an instruction requiring Pirelli to prove that the tire in question was manufactured after December 14, 1994. The district court rejected the proposed instruction and further refused to include any instruction regarding the date of production, thereby relieving Pirelli of its burden of proving when the tire was manufactured. The reason behind this on-the-record ruling is not clear. The transcript reveals that the district court, although having made contrary summary judgment rulings, adopted Pirelli's contention that Pirelli did not have the burden of proving when the tire was made. Further, the transcript indicates that the district court

treated Titan's concession that it could not prove that the tire was made before December 14, 1994, as an admission that the tire was made after December 14, 1994. The question of when the tire was made was thus dropped from the trial.

As a consequence, to prevail on its counterclaim against Titan, Pirelli only had to prove that the tire was defective as the result of some failure on the part of Titan and that the defect caused the underlying accident. As an additional defense, Titan argued that the doctrine of judicial estoppel precluded Pirelli from claiming that the tire was defective because, in the underlying litigation, Pirelli had taken the exact opposite position, i.e., that the tire was not defective. The district court disagreed, concluding that the doctrine of judicial estoppel was inapplicable because the underlying case settled and, as a result, Pirelli never won a favorable judicial ruling with its prior non-defect position.

Additionally, to prove that the tire was defective and that the defect caused the accident, Pirelli relied upon the deposition testimony of Robert Ochs, the plaintiffs' expert from the underlying litigation. However, Titan moved for discovery sanctions under Federal Rule of Civil Procedure 37(c)(1), requesting that the district court exclude Ochs's testimony from trial because Pirelli failed to properly disclose this opinion evidence under Federal Rule of Civil Procedure 26(a)(2)(A). The district court denied Titan's motion, finding that the discovery violation was harmless for two reasons. First, Titan participated in Ochs's deposition and thus knew the substance of his testimony. Second, Pirelli put Titan on notice of its intent to rely on Ochs's opinion when it responded to Titan's interrogatories in this case.

Ultimately, the jury returned a verdict in favor of Pirelli and awarded $223,625.00 in damages. This amount represents the attorneys' fees and costs incurred by Pirelli as the

Nos. 03-3223, 03-3224 & 03-3225   7

result of Titan's breach of its contractual obligation to indemnify Pirelli for matters related to the underlying accident. The district court also awarded $36,150.98 in prejudgment interest for a total judgment amount of $259,775.98. Titan appeals.

## II.

Titan seeks to overturn that judgment by challenging four key district court decisions: (a) the interpretation of the addendum, (b) the rejection of the proposed jury instruction on the elements of Pirelli's counterclaim, (c) the decision to not judicially estop Pirelli on the defectiveness issue, and (d) the determination that Pirelli's discovery violation was harmless. We will address each in turn.

### A. Interpretation of the Addendum

Titan first maintains that the district court incorrectly ruled that the addendum was unambiguous and limited Pirelli's liability to tires made before December 14, 1994. Under Illinois contract law, whether a contract is ambiguous is a question of law subject to de novo review. *See WH Smith Hotel Servs., Inc. v. Wendy's Int'l, Inc.*, 25 F.3d 422, 427 (7th Cir. 1994); *Berryman Transfer & Storage Co. v. New Prime, Inc.*, 802 N.E.2d 1285, 1287 (Ill. App. Ct. 2004).

8                           Nos. 03-3223, 03-3224 & 03-3225

The addendum[2] entered into on December 14, 1994, states: "It is further agreed that [with respect to] all tires . . . that have been produced since Sept[ember] 1, 1994, provided they were produced to [Pirelli] specification[s], and [past Pirelli] practices[,] . . . Titan Tire is held harmless and indemnified by [Pirelli] as [stated] above [in the letter agreement]."

Titan argues that the absence of an explicit end date in the addendum renders the addendum ambiguous and that, as a result, the case should be remanded to permit a jury to consider its meaning. Titan hopes that a jury would find that the addendum indemnified Titan beyond December 14, 1994, the date of the addendum. However, Titan ignores the plain meaning of the terms: "all tires . . . that *have been produced*" and "*were produced*." Under Illinois law, "a court must give meaning and effect to every part of the contract." *Cress v. Recreation Servs., Inc.*, 795 N.E.2d 817, 852 (Ill. App. Ct. 2003). Here, there is no reason to treat the terms "have been produced" and "were produced" as meaningless surplusage. *See id.* These terms clearly indicate that the addendum

---

[2] The addendum in question was handwritten on the bottom of the one-paragraph letter agreement, dated November 22, 1994, from Sherwood Willard, vice president and general counsel for Pirelli, to Russell Ash, advisor to the chairman of Titan. The addendum was written and signed on December 14, 1994, by Maurice Taylor, the president of Titan, who was not an attorney. The actual text of the addendum, which was agreed to by Willard, is as follows:

> It is further agreed that all tires (LT235/85/R16) that have been produced since Sept. 1, 1994, provided they were produced to P.A.T.C. [Pirelli Armstrong Tire Corporation] specifications, and pass [sic] P.A.T.C. Des Moines practices that Titan Tire is held harmless and indemnified by P.A.T.C., as above.

addressed tires made in the past; in other words, tires manufactured before December 14, 1994, when the addendum was signed. Thus, the addendum's use of the past tense literally confines Pirelli's responsibilities to a finite period, the time from September 1, 1994 to December 14, 1994. Titan's contention that the relevant period was completely open-ended is an unreasonable expansion of the addendum's plain text. *See Forest Glen Cmty. Homeowners Ass'n v. Bishof*, 746 N.E.2d 1285, 1289 (Ill. App. Ct. 2001). Therefore, as the language employed in the addendum is susceptible to only one reasonable interpretation, the addendum is not ambiguous: Pirelli's obligations under the letter agreement are limited to tires produced before December 14, 1994. *See id.*[3]

Titan further complains that the district court ignored Titan's evidence of extrinsic ambiguity and, thereby, erroneously precluded the jury from considering the addendum's meaning. Under the doctrine of extrinsic ambiguity, a party may present evidence to show the existence of an ambiguity even though the contract appears clear on its face because, in certain situations, the real-world context shows that the

---

[3] We note that, contrary to Titan's additional assertion, the district court's mention of the addendum's "purpose" in its ruling was not some tacit acknowledgment that the addendum was ambiguous. (The district court observed that "Titan wanted coverage for [the three-month] period during which it had followed Pirelli's defective procedures." *See* Order, July 15, 2003, at 24.) Rather, it was a simple explanation of the plain meaning of the addendum as well as the context in which the addendum was created—a context reasonably drawn from the contractual provisions of the initial manufacturing agreement as modified by the letter agreement and as further modified by the addendum. *See Unelko Corp. v. Prestone Prods. Corp.*, 116 F.3d 237, 239-40 (7th Cir. 1997). The district court did not err in this regard.

contract does not actually mean what it appears to mean. *See AM Int'l, Inc. v. Graphic Mgmt. Assocs.*, 44 F.3d 572, 574 (7th Cir. 1995). However, "the general rule in Illinois is that only objective evidence supplied by disinterested third parties may establish an extrinsic ambiguity in a contract." *Ocean Atl. Dev. Corp. v. Aurora Christian Schs., Inc.*, 322 F.3d 983, 1003-04 (7th Cir. 2003); *see also Home Ins. Co. v. Chicago & N.W. Transp. Co.*, 56 F.3d 763, 768-69 (7th Cir. 1995); *AM Int'l*, 44 F.3d at 574-75; *but cf. Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 885 & n.1 (Ill. 1999).[4] Subjective evidence, on the other hand, is generally inadmissible. *See AM Int'l*, 44 F.3d at 575-76. Subjective evidence is "the testimony of the parties themselves as to what they believe the contract means."*Id.* at 575. In this case, Titan did not present evidence from disinterested third parties. Rather, it only offered subjective evidence: the deposition of its president, Maurice Taylor—the very person who drafted the addendum. According to Taylor, the addendum was meant to provide Titan with unlimited indemnity both retroactively and prospectively. Such evidence from a party's agent/employee/executive is frequently self-serving and inherently difficult to verify, which is exactly why such subjective evidence of ambiguity is inadmissible and should be disregarded, as it was in this case. *See Mathews v. Sears Pension Plan*, 144 F.3d 461, 467 (7th Cir. 1998); *AM Int'l*, 44 F.3d at 575.

---

[4] In *Air Safety*, the Supreme Court of Illinois noted that, although several appellate courts in Illinois have applied the doctrine of extrinsic ambiguity, it has not had an opportunity to formally adopt the doctrine. *See* 706 N.E.2d at 885 & n.1. We need not predict whether the Supreme Court of Illinois will adopt this principle, however, because we conclude that it is inapplicable in this case. *See generally Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 635-37 (7th Cir. 2002).

Nos. 03-3223, 03-3224 & 03-3225                                        11

### B. Jury Instruction/Elements of Pirelli's Counterclaim

Titan next contends that the district court erred in refusing to instruct the jury on an essential element of Pirelli's counterclaim against Titan, specifically, Pirelli's burden of proving that the tire at issue was produced after December 14, 1994. "We review jury instructions with deference, analyzing them as a whole to determine if they accurately state the law and do not confuse the jury." *Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 759 (7th Cir. 2003); *see also Pearson v. DaimlerChrysler Corp.*, 813 N.E.2d 230, 237 (Ill. App. Ct. 2004). Reversal is warranted when an instruction misstates the law and this misstatement misled the jury causing prejudice to one party. *See Aliotta*, 315 F.3d at 759; *Pearson*, 813 N.E.2d at 237.

Under the district court's interpretation of the addendum, Pirelli had to prove three elements in order to prevail on its counterclaim: first, the tire involved in the underlying accident was produced after December 14, 1994; second, the tire was defective due to actions or inactions taken by Titan; and, third, the defect was the proximate cause of the underlying accident. The district court twice ruled that all three, including the date issue, were issues for trial, and, on the second occasion, the district court expressly held that Pirelli's evidence regarding the date issue failed to show when the tire was made for summary judgment purposes and that the date of production remained a question of fact for trial.

At trial, Titan submitted a proposal to instruct the jury that, in order for Pirelli to prevail, the jury had to find that the tire at issue was produced after December 14, 1994. The district court, however, rejected the proposed instruction and refused to put the date issue to the jury. This on-the-record refusal contradicted the district court's prior summary judgment rulings, and instead endorsed Pirelli's contention

that Pirelli did not have the burden of proving when the tire was made. The district court's refusal was not justified by Titan's concession in its own case that it was unable to meet its burden of proving that the tire at issue was made before December 14, 1994. Although Titan threw in the towel on its own claim, it did not admit that the tire was made after December 14, 1994. Titan only conceded that it could not prove the tire was produced before December 14, 1994. Pirelli's counterclaim against Titan was a separate, independent cause of action in which Pirelli had its own burdens of proof to bear, including the burden to prove that the tire in question was produced after December 14, 1994.

By rejecting Titan's proposed instruction, the actual instruction given required Pirelli to prove only the second and third elements discussed above. Nowhere in the instructions did the district court reference the question of when the tire was produced. Furthermore, because the district court's jury instruction ruling came in the middle of the trial, the date issue was dropped from the case, and the jury did not have an opportunity to consider evidence about when the tire was made. By not having to prove that the tire was produced after December 14, 1994, Pirelli was relieved from proving an essential element of its counterclaim. Thus, the instruction given misstated the elements of Pirelli's claim, and this misstatement misled the jury into believing that the date of production did not matter, thereby prejudicing Titan; therefore, it was an abuse of discretion not to give Titan's proposed instruction to the jury. *See Aliotta*, 315 F.3d at 759, 770; *Pearson*, 813 N.E.2d at 237. Consequently, this case must be remanded for a new trial. On remand, Pirelli will have the burden of proving that the tire in question was produced after December 14, 1994, and the jury must be instructed accordingly.

### C. *Judicial Estoppel*

Titan further argues that the district court committed an error of law in its refusal to judicially estop Pirelli from asserting that the tire at issue was defective when Pirelli had taken the exact opposite position in the underlying litigation. "Judicial estoppel prevents a party that has taken one position in litigating a particular set of facts" and prevailed under that position "from later reversing its position when it is to its advantage to do so." *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992). Although judicial estoppel is a matter of discretion, *see In re Cassidy*, 892 F.2d 637, 642 (7th Cir. 1990), errors of law require plenary review, *see Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003); *Chapman v. Maytag Corp.*, 297 F.3d 682, 689 (7th Cir. 2002).

Titan twice requested that the district court judially estop Pirelli from employing a reverse position on the defectiveness issue. On both occasions, the district court denied Titan's request on the sole ground that, due to the settlement of the underlying case, Pirelli never won a favorable judicial ruling with its prior non-defect position. However, as Pirelli concedes, the district court's reasoning has been rejected by this court. *See Kale v. Obuchowski*, 985 F.2d 360, 361-62 (7th Cir. 1993). In *Kale*, this court held that a favorable settlement, such as the one in this case which benefitted Pirelli,[5] may be sufficient to show that the party to be estopped prevailed in the prior case regardless of whether

---

[5] The settlement was a benefit to Pirelli in three important respects. First, through the settlement, Pirelli was released from all liability by the underlying plaintiffs. Second, the settlement award was paid by Titan's insurer; thus, the lawsuit was settled through insurance coverage for which Pirelli did not pay premiums. Finally, the settlement enabled Pirelli to avoid the possibility that the underlying matter would be appealed.

14                      Nos. 03-3223, 03-3224 & 03-3225

a judicial decision was obtained. *See id*. Thus, the district court's ruling was contrary to established case law.[6]

Despite its erroneous rationale, however, the district court reached the correct result, and we affirm that result. *See Payne v. Churchich*, 161 F.3d 1030, 1038 (7th Cir. 1998) ("The rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." (internal quotation omitted)).[7] As judicial estoppel is an equitable concept, our law in this area is flexible. While there are boundaries, there is not a rigid set of rules to be enforced. *See Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 526-27 (7th Cir. 1999); *Levinson*, 969 F.2d at 264; *Cassidy*, 892 F.2d at 641-42. One aspect of the inquiry is whether the party to be estopped has taken clearly inconsistent positions. *See Cassidy*, 892 F.2d at 641. Obviously, it is inconsistent to first say that a tire was not defective and later say that the same tire was indeed defective. However, what is not clear in this case is the extent to which Pirelli had actually taken (i.e., adopted or endorsed) the non-defect position during the underlying action. In support of its estoppel argument, Titan points to only two ways in which Pirelli asserted that the tire was not defective. One, after the plaintiffs had already dismissed

---

[6] Additionally, although Titan did not explicitly raise this issue, we note that the district court erroneously looked to Illinois law to adjudicate the judicial estoppel question. Even though this is a diversity action, federal judicial estoppel law controls. *See Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 527 n.1 (7th Cir. 1999).

[7] The judicial estoppel matter need not be remanded to the district court for further consideration because this court has the authority to render judicial estoppel determinations in the first instance. *See Cassidy*, 892 F.2d at 641.

Nos. 03-3223, 03-3224 & 03-3225                    15

Pirelli from the underlying action but while Titan's cross-claim was still pending, Pirelli obtained two expert reports concluding that the tire was not defective. Two, in response to Titan's request for admissions, Pirelli stated that it had no direct evidence that the tire was defective. This is not enough to trigger the harsh consequences of judicial estoppel. Having been dismissed from the original complaint, the minimal degree to which Pirelli advanced the non-defect position as a defendant in a cross-claim is insufficient to establish that Pirelli firmly attached itself to that position for judicial estoppel purposes. Moreover, Pirelli's overriding position has always been that, to the extent the tire was defective, Titan was responsible for the defect. Therefore, under the unique circumstances of this case, we cannot conclude that Pirelli should be judicially estopped from asserting that the tire was defective. Pirelli's reflexive responses do not reach a level requiring drastic action. Consequently, on remand, Pirelli may again argue that the tire was defective.

### D. Discovery Violation

Lastly, Titan faults the district court for not sanctioning Pirelli under Rule 37(c)(1) for Pirelli's violation of Rule 26(a)(2)(A): failing to properly disclose the expert opinion of Robert Ochs. Again, Ochs was the plaintiffs' expert in the underlying action in which Pirelli was a defendant. Yet, in this case, Pirelli used his deposition to support its arguments that the tire was defective and the defect caused the accident. The district court excused Pirelli's discovery violation because it determined that it was harmless. *See* Fed. R. Civ. P 37(c)(1).

A district court enjoys broad discretion in declining to impose discovery sanctions and exclude evidence, and its "exercise of discretion on discovery matters will only be

16                                      Nos. 03-3223, 03-3224 & 03-3225

reversed upon a showing of a clear abuse of discretion." *McCarthy v. Option One Mortgage Corp.*, 362 F.3d 1008, 1012 (7th Cir. 2004). The district court found that Pirelli's violation was harmless for two reasons. First, Titan participated in Ochs's deposition during the underlying litigation and thus knew the substance of his testimony. Second, Titan had adequate notice of Pirelli's intent to rely on Ochs's opinion as the result of Pirelli's responses to Titan's interrogatories in this case. As these two reasons are entirely sound, we conclude that the district court's ruling was not an abuse of discretion.

### III.

Accordingly, we AFFIRM IN PART, REVERSE IN PART, VACATE the district court's judgment, and REMAND to the district court for further proceedings consistent with this opinion. The district court's one error on the elements of Pirelli's indemnity counterclaim invalidates the results of the trial in this case. On remand, given the unambiguous text of the parties' addendum, Pirelli will have the burden of proving that the tire at issue was produced after December 14, 1994, and the jury must be so instructed. Further, on remand, Pirelli may again argue that the tire was defective and may use the Ochs opinion to support that argument.

Nos. 03-3223, 03-3224 & 03-3225                              17

A true Copy:

Teste:

*Clerk of the United States Court of
Appeals for the Seventh Circuit*

USCA-02-C-0072—11-2-04